_____

No. 95-3611
_____

Lisa Anne Varner, Rony Varner,          *
Peggy Varner,                           *
                                        *
            Plaintiffs/Appellees,       *
                                        *
      v.                                *
                                        *
National Super Markets, Inc.,           *
                                        *
            Defendant/Appellant.        *

_____

No. 95-3839          Appeals from the United States
_____          District Court for the
                     Eastern District of Missouri.

Lisa Anne Varner,                       *
                                        *
            Plaintiff/Appellant,        *
                                        *
Rony Varner, Peggy Varner,              *
                                        *
            Plaintiffs,                 *
                                        *
      v.                                *
                                        *
National Super Markets, Inc.,           *
                                        *
            Defendant/Appellee.         *

_____

Submitted: June 10, 1996

Filed: September 9, 1996
_____

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
      DOTY,* District Judge.
_____

*The HONORABLE DAVID S. DOTY, United States District
Judge for the District of Minnesota, sitting by
designation.

WOLLMAN, Circuit Judge.

National Super Markets, Inc. (National) appeals the district court's[1] judgment in favor of Lisa Anne Varner on her claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 et seq. Varner cross-appeals various rulings by the district court. We affirm.

## I.

Over the course of several weeks in the spring of 1991, Robert Edmiston, a 51-year-old produce worker at National, approached Varner, a 17-year-old floral worker, and made graphic sexual comments and displayed pornography to her. In July or August of 1991, Edmiston approached Varner from behind, reached his arms under Varner's arms, and squeezed her breasts. Varner broke free and ran from the room. She then finished her shift and went home. Varner called Chris Pilch, who was her fiance and also a National employee, and related what had happened. Pilch immediately called Curtis Mason, the store manager, and told him that Edmiston had grabbed Varner's breasts. According to Pilch's testimony, Mason told him that he could not do anything unless Varner reported the incident to him, and then he could possibly say something to Edmiston, but that would make the situation worse. According to Pilch, Mason further advised him that "he could just let it alone and maybe Bob would just leave her alone and forget about it." Mason did not report the incident to anyone.

On November 22, 1991, Edmiston again approached Varner from behind, put his arms through her arms, and grabbed her breasts. Edmiston then grabbed Varner's thumbs and forced her hand behind

_____

[1]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

-2-

her back into his crotch area. Varner again broke free and ran from the room -- on her way out telling co-worker Patrick McCorkle that Edmiston had grabbed her. Varner finished her shift and went home, where she told her mother what had happened and then called Pilch and told him what had happened. Pilch called Mason that evening and told him that Edmiston had again grabbed Varner's breasts. Pilch testified that Mason's response was the same this time as it had been after the first complaint, except this time Mason added an additional dismissive comment: "That's just Bob being himself." Mason again took no further action. Mason testified that he told Pilch to tell Varner to call Roger Beckman in the Human Resources Department.

Varner reported the incident to the police the next morning. At the police officers' request, Varner telephoned Edmiston. The police taped the conversation, in which Edmiston admitted sexually assaulting Varner on two occasions. The police went to National's store and arrested Edmiston. Mason told the police that he was aware of the incidents but that there was nothing he could do unless Varner told him about it herself. Mason then contacted his district manager about the incident.

Although Varner continued to work, she suffered from nightmares, mood swings, depression and crying episodes, and she became afraid to go to work. She was diagnosed as suffering from post-traumatic stress syndrome caused in part by the sexual comments and the first touching incident, but mostly caused by the November 22, 1991 incident.

National's sexual harassment policy directs employees who believe they have been subjected to sexual harassment to contact individuals in the Human Resources Department or the Labor Relations Department. The policy provides that a supervisor who has learned of an incident of sexual harassment is to direct the employee to contact one of those individuals; the supervisor is not

to take any personal action.  The policy was included in the employee orientation handbook that Varner had agreed to familiarize herself with during orientation.

Varner was a member of United Food & Commercial Workers' Union, Local 655, which has a collective bargaining agreement (CBA) with National. Varner did not participate in the grievance and arbitration procedures in place under the CBA.

Varner filed a complaint with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) on May 18, 1992.  She then filed her complaint in Missouri state court.  National removed the action to federal district court.  A jury awarded Varner $30,000 in actual damages.  The district court denied National's motion for judgment as a matter of law (JAML).

National argues on appeal that the district court erroneously denied its motion for JAML because:  (1) Varner's exclusive remedy is under the Missouri workers' compensation law; (2) Varner failed to exhaust grievance and arbitration remedies under the CBA; (3) Varner failed to invoke the reporting procedures of National's sexual harassment policy; and (4) Varner failed to timely file her administrative complaint, and thus her claims concerning any pre-November 22, 1991 incidents were barred by the statute of limitations.  Varner cross-appeals, arguing that the district court erred in formulating jury instructions, admitting and excluding certain evidence, and in failing to submit her punitive damages claim to the jury.

We review a district court's denial of a motion for JAML de novo, applying the same standard used by that court.  <u>Triton Corp. v. Hardrives, Inc.</u>, 85 F.3d 343, 345 (8th Cir. 1996).  We must view all facts and resolve any conflicts in favor of Varner, giving her the benefit of all reasonable inferences.  <u>Id.</u>  We will affirm the

-4-

denial of the motion for JAML if a reasonable jury could differ as to the conclusions that could be drawn, and we will not weigh, evaluate, or consider the credibility of the evidence. Id.

## II.

National first argues that the district court lacked subject matter jurisdiction over Varner's complaint because Varner's exclusive remedy was under state workers' compensation law, as the damages she claimed were the same as those provided under the Workers' Compensation statute. Mo. Rev. Stat. §§ 287.010 et seq. The exclusivity provision of the Missouri workers' compensation statute provides that:

> The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of such accidental injury as death, except such rights and remedies as are not provided for by this chapter. Mo. Rev. Stat. § 287.120.2.

We recently rejected a similar contention, holding instead that the exclusivity provision cannot preempt an employee's federally-created right to recover damages under Title VII. Karcher v. Emerson Electric Co., No. 95-3427, slip op. at 12 (8th Cir. Sept. 4, 1996). Moreover, as we did in Karcher, we decline to read the provision to bar the recovery of damages under the MHRA absent clear direction from the Missouri courts, and we have found no such direction.

Although Missouri courts have held that the exclusivity provision bars common law tort actions that arise out of incidents covered by the workers' compensation act statute, see, e.g., Hill v. John Chezik Imports, 797 S.W.2d 528, 531 (Mo. Ct. App. 1990), they have not extended the exclusivity provision to bar suits under the MHRA. Indeed, the language of the MHRA appears to preclude any

-5-

such finding.  The statute states, in relevant part, that:

> The provisions of this chapter shall be construed to accomplish the purposes thereof and any law inconsistent with any provision of this chapter shall not apply.

As we said in Karcher, we interpret broadly the remedial purpose of the MHRA, and we thus hold that an award of damages under the statute is not foreclosed by the possibility that such damages would have been recoverable under the Workers' Compensation Act.  Karcher, slip op. at 12.

### III.

National next argues that the district court erred in failing to grant its motion for JAML because Varner failed to exhaust grievance and arbitration remedies under the CBA.

The Missouri Supreme Court has resolved this question with respect to the MHRA, holding that exhaustion of other available administrative remedies is not required before filing suit under the MHRA.  Green v. City of St. Louis, 870 S.W.2d 794, 796 (Mo. 1994) (en banc).  Moreover, the United States Supreme Court has held that the pursuit of a claim through grievance and binding arbitration under a CBA does not preclude a civil suit under Title VII, see Alexander v. Gardner-Denver Co., 415 U.S. 36, 49 (1974), and we believe the same reasoning applies to a plaintiff who has chosen not to participate in the grievance procedure.

In Alexander, the Court stated that, "federal courts have been assigned plenary powers to secure compliance with Title VII."  415 U.S. at 47.  We interpret this absolute grant of power to entail an absolute right to adjudicate suits under Title VII as long as the jurisdictional prerequisites dictated in Title VII itself are satisfied.  These prerequisites do not include an exhaustion of

grievance procedures under a CBA.  See 42 U.S.C. § 2000e-5(b),(e) and (f).
See also Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, 1326
n.3 (8th Cir. 1994).  Thus, National's argument that such an exhaustion is
required before bringing suit is without merit, and the district court
therefore did not err in denying National's motion for JAML.

**IV.**

National next argues that the district court erred in denying its
motion for JAML because Varner failed to invoke the reporting procedures
of National's sexual harassment policy.  We reject this claim.   The
relevant question is whether National knew or should have known of the
harassment and failed to implement prompt and appropriate corrective
action.  Staton v. Maries County, 868 F.2d 996, 998 (8th Cir. 1989).

We conclude that Varner's reports of the incidents to Mason through
Pilch sufficiently put National on notice of the incidents.  We look to
agency principles to determine whether an employer knew or should have
known of the harassment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,
72 (1986).  Indeed, Title VII defines employer to include any "agent" of
the employer.  42 U.S.C. § 2000e(b).  Accordingly, Pilch's notification to
Mason while Mason was acting in his supervisory capacity was sufficient to
constitute notice to National.  We find no significance in the fact that
it was Varner's fiance who notified Mason, rather than Varner herself.

Moreover, we conclude that once National was notified, it failed to
take reasonable remedial action.  Sufficient evidence supports a finding
that Mason's response to Pilch's complaint was inadequate.  Moreover, even
if Mason was not the proper person to conduct an investigation of the
incidents and take the appropriate corrective action, he had undisputed
supervisory authority and could have informed the appropriate individuals
responsible for

-7-

taking action.

Further, we conclude that National's sexual harassment policy is not alone sufficient to shield it from liability.  The Supreme Court in Meritor held that while a plaintiff's failure to invoke a company's written procedure is relevant, it is not dispositive.  477 U.S. at 72.  The Court found that a policy that was not "calculated to encourage victims of harassment to come forward" did not insulate the company from liability. Id. at 73.  National's policy, although certainly laudable in its intentions and objectives, in effect required Varner's supervisor to remain silent notwithstanding his knowledge of the incidents.  We can understand an employer's desire to utilize a chain-of-command structure, but a procedure that does not require a supervisor who has knowledge of an incident of sexual harassment to report that information to those who are in a position to take appropriate action falls short of that which might absolve an employer of liability.

## V.

National argues that Varner failed to timely file her administrative complaint with respect to all except the November 22, 1991, incidents of sexual harassment.  A plaintiff is required to file a complaint under Title VII and the MHRA with the relevant enforcement agency within three hundred days of the discriminatory act.  See 42 U.S.C. § 2000e-5(e); Mo. Rev. Stat. §§ 213.075, 213.111.  Varner filed a concurrent complaint with the MCHR and the EEOC on May 18, 1992.  The November 22, 1991, incident clearly falls within the limitations period.  The earlier incidents of verbal harassment, however, do not.  Because the witnesses could only approximate the date of the first touching incident, it is unclear whether that incident fell within the relevant period.

Even if we assume that the November 22 assault is the only incident that fell within the statute of limitations, National's

argument still must fail. We have found that evidence of a hostile environment falls under the "continuing violation" exception to a statute of limitations bar and that the limitations period runs from the "last occurrence of discrimination." Gipson v. KAS Snacktime Co., 83 F.3d 225, 229 (8th Cir. 1996) (citations omitted). Under this theory, the entire course of conduct creating the hostile environment suffered by Varner is actionable.

## VI.

Varner cross-appeals the district court's decision not to submit a punitive damages instruction to the jury. To collect punitive damages under the Civil Rights Act of 1991, Varner must show that National engaged in discrimination "with malice or reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). To collect punitive damages under the MHRA, Varner must show that National's conduct was "outrageous because of its evil motive or reckless indifference to [Varner's rights]." Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1062 (8th Cir. 1993).

Varner made no showing that National acted with malice or deliberate indifference or that its conduct was outrageous. See Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 804 (8th Cir. 1994) (to recover punitive damages, Missouri law requires showing of conduct that would "shock the conscience and cause outrage"); Turic v. Holland Hospitality, Inc., 85 F.3d 1211, 1216 (6th Cir. 1996) (duplicitous actions of employees insufficient to support punitive damages award under Civil Rights Act of 1991); Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 830 n.9 (4th Cir. 1994) (a showing of more than intentional discrimination is required to recover punitive damages under Civil Rights Act of 1991). Accordingly, the trial court did not err in refusing to submit a punitive damages instruction to the jury.

Given our holding on National's claims on appeal, we need not address Varner's remaining claims on cross-appeal.

The judgment is affirmed.

A true copy.

Attest:

　　　CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.