United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1075
_____

Lee Browning,                          *
                                       *
          Appellee,                    *
                                       *
     v.                                *    Appeal from the United States
                                       *    District Court for the Eastern
President Riverboat Casino-            *    District of Missouri.
Missouri, Inc.,                        *
                                       *
          Appellant.                   *


_____

No. 97-3828
No. 97-3830
_____

Lee Browning,                          *
                                       *
     Appellee, Cross-Appellant,        *
                                       *
     v.                                *    Appeal and Cross-Appeal from
                                       *    the United States District
President Riverboat Casino-            *    Court for the Eastern District
Missouri, Inc.,                        *    of Missouri.
                                       *
     Appellant, Cross-Appellee.        *

_____

Submitted: September 10, 1997

Filed:      March 20, 1998
_____

Before McMILLIAN, ROSS and MURPHY, Circuit Judges.
_____

ROSS, Circuit Judge.

President Riverboat Casino-Missouri, Inc. (Riverboat) appeals from a judgment entered in the district court following a jury verdict finding that Riverboat discharged Lee Browning from employment as a security office manager because he was white, in violation of 42 U.S.C. § 1981, Title VII and the Missouri Human Rights Act (MHRA). Riverboat now appeals from the court's findings of liability and damages. In a subsequently filed appeal and cross appeal, now consolidated with the present case, both parties contest the amount of attorney's fees awarded by the district court. For the reasons set forth below, we affirm the finding of liability and reverse in part and affirm in part the findings of damages. We affirm the conclusions with respect to attorney's fees.

## I.

Browning was 54 years old at the time he was terminated from his employment with Riverboat. He was one of three security managers who worked for Riverboat; the other two security managers, Moody and Holloway, as well as Willie Taylor, the director of security and Browning's immediate supervisor, were black. The security department was responsible for safeguarding Riverboat's property along the

-2-

Mississippi riverfront in St. Louis, including the riverboats the Admiral and the Robert E. Lee. On December 10, 1993, Browning was hired by Taylor to work for Riverboat as a security manager, while Browning's two counterparts, Moody and Holloway, were hired on November 18, 1993. Browning testified that although Taylor told him during the pre-employment interview that the three security managers would decide who would be assigned to the day, evening or night shifts, by the time Browning reported to work he was informed that he had been assigned the undesirable night or "graveyard" shift, while Holloway would be on the day shift and Moody would be on the evening shift. When Browning reminded Taylor that he had promised to let the security managers work out the shift assignments among themselves, Taylor replied, "that's the way it is, if you don't like it you can quit."

Browning also produced evidence for the purpose of showing that Taylor treated him unfavorably as compared to the two black security managers. For example, Browning alleged that Taylor allowed Holloway to leave work early on occasion, while Browning was denied the same request. Taylor criticized Browning for keeping a "messy desk," while according to Naomi Purchase, Taylor's secretary, Browning's desk was "much neater" than Holloway's desk which was "extremely messy." Holloway was never reprimanded for having a messy desk. On another occasion, Taylor allegedly instructed Ms. Purchase, who had previously provided typing services for all three security managers, not to do any more typing for Browning, while Taylor allowed her to continue to provide typing for Moody and Holloway. Further, at some point during Browning's brief employment with Riverboat, Naomi Purchase saw Browning come out of Taylor's office looking "mad" after a meeting with Taylor. She asked Taylor if everything was okay, to which Taylor responded, "that white boy better learn who he's messing with, he better get

his act together." Browning was terminated after only sixty-seven days of employment and was replaced by a white woman.

Riverboat presented evidence in an attempt to show that Browning's tenure was marked by consistent lapses in performance. For example, in the early morning hours of January 25, 1994, while working the late night shift, Browning was informed that a power box underneath a metal ramp leading from the levee to the Robert E. Lee was sporadically emitting sparks during heavy thunderstorms. Browning stated that he secured the area by posting a security officer at the site and determined that there was no combustible material in the vicinity. Browning further alleged that he attempted to contact appropriate personnel to deal with the problem, but he only left messages as he was unable to reach anyone. Lee Sorenson, Riverboat's chief engineer, stated that he was unhappy that he had not been notified of the sparking incident immediately. Browning left a report of the sparking incident for Taylor in the log book when he went off duty at 7:00 a.m. Nevertheless, Taylor wrote a memorandum to Browning asking him to submit another report detailing the circumstances "as soon as possible." Browning submitted a handwritten memo the next day, but was criticized for failing to submit a typewritten report.

The jury returned a verdict in favor of Browning, and the court entered judgment upon that verdict. The jury awarded Browning $46,000 in back pay, $50,000 in emotional distress damages, and $50,000 in punitive damages. Thereafter, the trial judge awarded Browning $11,034 in additional back pay and prejudgment interest and two years of front pay totalling approximately $30,000. The trial judge subsequently denied Riverboat's Motion for Judgment as a Matter of Law (JAML) or for a new trial. Riverboat now appeals the denial of the JAML, arguing that the

jury should not have been given an instruction under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), and that the evidence was insufficient to support the jury's verdict. On the damages phase, Riverboat argues the court erred in submitting Browning's claims for punitive and emotional distress damages to the jury and in awarding front pay.

II.

Riverboat first contends the district court erred in submitting the Price Waterhouse instruction to the jury and further that the district court erred in denying its motion for JAML because the jury's finding of discrimination was not supported by the evidence. Appellate review of a jury verdict is extremely deferential. The court must consider the evidence in the light most favorable to Browning, assume that all conflicts in the evidence were resolved in favor of Browning, assume as proved all facts that Browning's evidence tended to prove, and give Browning the benefit of all favorable inferences that may reasonably be drawn from the facts proved. Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir.) (en banc), cert. denied, 117 S. Ct. 2510 (1997). Judgment as a matter of law is proper only when the evidence is such that, without weighing the credibility of the witnesses, there is a complete absence of probative facts to support the verdict. Id. at 845.

Under the mixed motive analysis of Price Waterhouse, as modified by § 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-2(m), an unlawful employment practice is established when an individual demonstrates that an illegitimate criterion was a motivating factor in an adverse employment action, even though other factors also motivated the action. Deneen v. Northwest Airlines, Inc., 132 F.3d 431, 435-36

(8th Cir. 1998).  The defendant may attempt to limit relief to declaratory judgment, injunctive relief or attorney's fees by showing that it would have made the same employment decision in the absence of discriminatory motive.  Id.

"Direct evidence" has been interpreted as "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to find that that attitude was more likely than not a motivating factor in the employer's decision."  Thomas v. First Nat'l Bank, 111 F.3d 64, 66 (8th Cir. 1997) (quoting Kriss v. Sprint Communications Co., 58 F.3d 1276, 1282 (8th Cir. 1995)).  "Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a motivating factor in an employment decision."  Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993).  For example, "direct evidence" does not include "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself."  Price Waterhouse, 490 U.S. at 277.

Taylor's reference to Browning as "that white boy" in the context of Browning's employment warrants an inference of discriminatory attitude sufficient to permit the factfinder to conclude that race was a motivating factor in the decision to terminate Browning.  Such use of a racial slur by a supervisor and the principal decisionmaker in Browning's termination constitutes more than a stray remark in the workplace and directly suggests the existence of bias; no inference is necessary.  Compare Delph v. Dr. Pepper Bottling Co., 130 F.3d 349, 352 (8th Cir. 1997) (recognizing "black boy" as a racial slur.)  This comment did not simply evidence an awareness of the employee's gender or race, it reveals "a decidedly negative attitude

-6-

toward [white] people on the part of [a person] responsible for [the employment decision]." <u>EEOC v. Alton Packaging Corp.</u>, 901 F.2d 920, 924 n.6 (11th Cir. 1990); <u>see also</u> <u>Beshears v. Asbill</u>, 930 F.2d 1348, 1354 (8th Cir. 1991) (direct evidence of discrimination can include employer's remarks reflecting discriminatory attitude).

Aside from his direct proof of discrimination, Browning presented circumstantial evidence also indicating a discriminatory animus because of his race, including evidence that Browning was treated unfairly as compared to Holloway and Moody, in that Taylor denied leave to Browning while granting leave to Holloway and Moody; criticized Browning's disorganized desk, while disregarding Holloway's disorganization; and provided secretarial services to Moody and Holloway while limiting Browning's access to such services. Although Riverboat contradicts much of this evidence, we are constrained to view the evidence in the light most favorable to Browning.

Riverboat briefly asserts on appeal that it would have taken the same action against Browning even in the absence of racial bias because Browning's performance was deficient. According to Riverboat, Browning's performance was deficient in his failure to properly respond to the sparking incident, to submit typewritten memos, and to attend a layoff of security officers. Browning, however, introduced evidence which tended to show that his performance had not been deficient and that criticisms leveled against him were not equally directed against Holloway and Moody.

Because the record contains sufficient evidence to support the jury's finding of intentional discrimination, <u>see</u> <u>Beshears</u>, 930 F.2d at 1354, we conclude that the district court properly held that Riverboat was not entitled to judgment as a matter of

law. Because the mixed-motive analysis was appropriate in this case, we need not address the sufficiency of the proof under the pretext analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).

III.

Riverboat next argues that Browning did not adduce sufficient evidence to permit submission of either his punitive damage or emotional distress damage claims to the jury.  Browning counters that Riverboat is barred from asserting these arguments because Riverboat did not raise the arguments in its Rule 50(a) motion at the close of evidence.  Fed. R. Civ. P. 50(a).

In its pre-verdict motion filed on January 23, 1996, Riverboat asserted that the evidence adduced by Browning was insufficient to support a jury finding that Riverboat terminated Browning because of his race. Following the verdict, Riverboat filed its motion for judgment as a matter of law, or in the alternative for a new trial, stating that the "Court erred in submitting the issue of punitive damages to the jury," and the "verdict on Plaintiff's claim for emotional distress damages was against the great weight of the evidence and was excessive."  Riverboat further objected to the submission of the punitive damages claim at trial, arguing that the claim was not supported by the evidence in the case.

A party is required to have raised the reason for which it is entitled to judgment as a matter of law in its Rule 50(a) motion before the case is submitted to the jury and reassert that reason in its Rule 50(b) motion after trial if the Rule 50(a) motion proves unsuccessful.  <u>Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.</u>, 53 F.3d 195, 197

(8th Cir. 1995).  Thus, a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion because the party must apprise the district court of the alleged insufficiency of the plaintiff's suit before the case is submitted to the jury.

In Jarvis v. Sauer Sundstrand Co., 116 F.3d 321, 323 n.4 (8th Cir. 1997), the court considered whether a party's pre-verdict motion, which did not specifically include a reference to insufficiency of the evidence with respect to liquidated damages under the ADEA, could support the grant of JAML on that basis.  The court held the JAML grounds were fairly raised in the pre-verdict motion through the defendant's argument that the plaintiff's evidence was insufficient to support the ADEA claim.  Id.  The court stated that the movant's grounds for the motion need not be stated with technical precision, and further that the plaintiff failed to show that he lacked fair notice or that he did not have an opportunity to cure deficiencies in his proof.   Id.

In Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1061 (8th Cir. 1993), on the other hand, the defendant argued in its motion for directed verdict that the evidence was insufficient to support a finding of sex discrimination, and only raised its claim related to emotional distress damages for the first time in its post-verdict motion.  We concluded that defendant's post-verdict motion, encompassing the emotional distress damages claim, raised new grounds and therefore it exceeded what was permitted under Rule 50(b).  Accordingly, we refused to consider the sufficiency of the emotional distress evidence.

Here, as in Jarvis, Riverboat argued in its Rule 50(a) motion, that the evidence was insufficient for a finding of race discrimination. Following Jarvis, we conclude

this argument was sufficient to apprise the district court of the alleged insufficiency of plaintiff's suit with respect to the punitive damages claim. Kientzy, however, controls our conclusion with respect to the emotional distress damages claim. As in Kientzy, Riverboat failed to raise any claim regarding emotional distress damages in its Rule 50(a) motion for judgment as a matter of law. Instead the issue was raised for the first time in its post-verdict Rule 50(b) motion. Unlike punitive damages, which involve proof of a heightened degree of discrimination, Riverboat's claims with respect to emotional distress damages require proof of evidence of the nature and extent of emotional harm caused by the alleged violation. See Carey v. Piphus, 435 U.S. 247, 263-64 & n.20 (1978); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 938 (5th Cir. 1996), cert. denied, 117 S. Ct. 767 (1997). This proof is wholly unrelated to the proof required to show discrimination. Therefore, while the Rule 50(a) argument addressed the sufficiency of the evidence to support a discrimination claim, and by extension, punitive damages, such argument failed to apprise the district court of Riverboat's challenges to emotional distress damages. Accordingly, Riverboat is barred from appealing the denial of its Rule 50(b) motion as to the sufficiency of the evidence of emotional distress injury. We now turn to the punitive damages claim.

To collect punitive damages under Title VII or § 1981, Browning was required to demonstrate that Riverboat engaged in discrimination "with malice or with reckless indifference to [his] federally protected rights." 42 U.S.C. § 1981(b)(1); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997) (standard for punitive damages same under Title VII and § 1981). In order to recover punitive damages under the MHRA, Browning had the burden to show that Riverboat's "conduct [was] outrageous because of its evil motive or reckless indifference to the rights of others."

Kientzy, 990 F.2d at 1062 (citing Burnett v. Griffith, 769 S.W.2d 780, 789 (Mo. 1989) (en banc)). Punitive damages under Missouri law are appropriate only upon a showing of discriminatory conduct that would "shock the conscience and cause outrage." Karcher v. Emerson Elec. Co., 94 F.3d 502, 509 (8th Cir. 1996), cert. denied, 117 S. Ct. 1692 (1997). Riverboat now argues that evidence at trial was insufficient to meet either the state or federal standard for punitive damages.

To support his punitive damages claim, Browning argues that Taylor acted with malice by willfully discriminating against him because of his race and that Gary Armentrout, who was assigned by Riverboat to investigate the discrimination charge, acted with reckless indifference to Browning's rights by failing to meaningfully investigate his complaints of racial discrimination.[1]

We agree with Riverboat that this evidence does not support a finding either that Riverboat acted with malice or deliberate indifference or that its conduct was outrageous. This evidence is in stark contrast to the type of evidence that this court has found will support an award of punitive damages. See, e.g., Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575-76 (8th Cir. 1997) (evidence that manager and supervisor repeatedly made crude, sexist comments to plaintiff, called her highly offensive names and kicked her; plaintiff complained directly to the offending managers and others but no action was taken). Further, in Karcher we held that § 1981a requires a showing of more than intentional discrimination to recover punitive

---

[1]The record shows that the chairman of the parent company directed a high-ranking executive, Gary Armentrout, to investigate Browning's claims. After interviewing Browning and Taylor and reviewing materials they each provided, Armentrout concluded that Browning's termination was justified.

damages. 94 F.3d at 509 (citing Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 830 n.9 (4th Cir. 1994)).  A review of the record reveals that neither Taylor's actions, nor Riverboat's response thereto rose to the level to support a punitive damages award.  Accordingly, we conclude that the trial court erred in submitting the punitive damages claim to the jury and the punitive damages award must be set aside.

## IV.

The trial judge awarded Browning two years of front pay amounting to approximately $30,000 in order to compensate him for future lost income between October 15, 1996 and December 21, 1998.  Riverboat argues Browning was not entitled to front pay because the front pay constitutes an overlap in remedies and therefore amounts to a windfall.  Riverboat's argument is moot in light of our prior conclusion that Browning is not entitled to punitive damages.  Compare  Newhouse v. McCormick & Co., 110 F.3d 635, 643 (8th Cir. 1997) (victim of age discrimination can recover both front pay and punitive liquidated damages).

V.

   Riverboat argues in its consolidated appeal that Browning is not entitled to attorney's fees notwithstanding his prevailing party status because Browning's attorney was disbarred by the State of Missouri prior to completion of his contingency fee agreement with Browning.  In its response to Browning's fee petition, Riverboat only challenged the amount of fees requested and did not raise the question of whether his attorney's disbarment precluded an award of fees.  Because Riverboat did not raise this issue before the district court, we will not consider the argument on appeal.

   Riverboat also challenges various aspects of the district court's fee award, including claims that the fees awarded were excessive and unreasonable because of the lack of complexity of the case, the duplicative nature of certain fees, and the award of fees for undocumented hours.  On cross appeal, Browning challenges the district court's decision to reduce the hourly rates of Browning's attorneys and its refusal to award compensation for communication costs.  Because the district court is in the best position to determine the reasonableness of attorney's fees, we will not disturb a district court's award of fees unless there has been an abuse of discretion.  Delph, 130 F.3d at 358.  Following our review of the record and the arguments of the parties, we find no abuse of discretion in the district court's award of fees in the present matter.

VI.

We have considered each of Riverboat's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is reversed with respect to the punitive damages award. The remainder of the district court's decision is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.