# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1520

_____

Robin Lawrence,

    Plaintiff-Appellee,

    v.

CNF Transportation, Inc.,

    Defendant-Appellant.

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: April 14, 2003
Filed: August 11, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff-Appellee Robin Lawrence sued her employer, Defendant-Appellant CNF Transportation, Inc. (CNF), alleging gender discrimination and a violation of the Equal Pay Act. A jury awarded her $10,000 in lost wages and benefits, $125,000 in nonpecuniary damages, and $1 million in punitive damages. The district court reduced the awards to $9,462, $30,000, and $200,000 respectively. CNF moved for judgment as a matter of law, and for a new trial. The district court denied CNF's

motions. In this appeal, CNF contends Lawrence failed to make a submissible case under the Equal Pay Act and for punitive damages, and argues for reversal of the judgment in favor of Lawrence. In addition, CNF contends it is entitled to a new trial based on evidentiary errors. We affirm in part and reverse in part.

## I. BACKGROUND

From 1984 to 1987, Robin Lawrence was employed by CNF as a part-time casual worker performing clerical work such as answering the phone, filing, and routing freight bills. She left CNF in 1987, but returned around 1990 or 1991, continuing as a part-time employee until 1996. In March 1996, Lawrence began full-time employment with CNF in the inside sales department at the CNF terminal in Kansas City, Missouri.

Lawrence's inside sales position did not require her to visit customers outside the office. Her responsibilities included clerical assistance, working on smaller accounts, and assisting the salesperson in charge of the trade show account. The trade show account involved hauling freight for trade shows held in the Kansas City area. At that time, the trade show account was handled by Mike Baldami, a CNF salesperson who had acquired the account after approximately two to three years of sales calls. Baldami left CNF shortly after Lawrence was hired in the inside sales department and the trade show account was taken over by Wade Ensor. After approximately three months, Ensor transferred to outside sales.

On July 1, 1996, Lawrence was promoted to an outside sales position with the title of "Account Manager II." In this position, Lawrence had approximately eighty-five accounts assigned to her and was given the use of a company car. Lawrence's former position in inside sales was filled by Nick Bonacorso, who had been employed by CNF as a full-time casual clerical employee since 1988.

-2-

In May 1997, Lawrence met with Blair Benedict, CNF's Kansas City division sales manager. Benedict informed Lawrence that CNF wanted to promote her to the position of "trade show specialist." In this position, her focus would be to develop the trade show business. Benedict told Lawrence she would not get a raise with the new position and would lose her company car. However, if she accepted the position she could reduce the volume of her outside accounts. If Lawrence chose not to accept the position, she could keep her company car but would have to increase her outside accounts. Additionally, she would continue to work the trade show account but would get no inside clerical assistance. Lawrence complained that this did not seem like a promotion and said that she would need to think about the offer.

Lawrence ultimately accepted the position and was listed as a trade show specialist in the CNF flier and on her business cards. Lawrence retained some of her outside accounts. CNF did not employ an inside salesperson to assist Lawrence with the trade shows or with clerical duties. Her company car was reassigned to Benedict effective July 1, 1997, and the company car Benedict had been using was sent to a salesperson in Monroe, Louisiana.[1] Lawrence continued as the trade show specialist until she left CNF in July 1998. When Lawrence left CNF, she was making $756 per week as the trade show specialist. Bonacorso replaced Lawrence as the trade show specialist and he received a raise to $900 per week. He was also given the uninterrupted use of a company car.

Lawrence filed suit claiming a violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010, *et seq.* The jury found in Lawrence's favor on all claims and awarded

---

[1] Although Lawrence was reassigned a car on May 18, 1998, CNF authorized Benedict to use Lawrence's car while his was being repaired. Lawrence testified that Benedict was still using her company car when she resigned in July 1998.

Lawrence $10,000 in lost wages, $125,000 in emotional distress damages, and $1 million in punitive damages. The district court remitted the lost wages to $9,462 (the Title VII recovery), added liquidated damages of $9,462, remitted the emotional distress award to $30,000, and remitted the punitive damages award to $200,000. Lawrence consented to the remitted award.

On appeal, CNF argues that Lawrence failed to make a submissible case that she was paid less than a male employee performing equal work. CNF also argues that it was entitled to judgment as a matter of law because the evidence showed that the pay disparity between Lawrence and Bonacorso was based on factors other than sex. In addition, CNF argues it is entitled to judgment as a matter of law on Lawrence's punitive damages claim. Finally, CNF argues it is entitled to a new trial on all issues because the district court erroneously admitted financial documents pertaining to the wrong company.

Lawrence argues that the jury verdict and remitted award should be affirmed because: reasonable and fair-minded jurors could find that the positions held by Lawrence and Bonacorso were substantially equal given the skill, effort, and responsibilities of the two positions; CNF failed to satisfy its burden of proving that the pay disparity was based upon any factor other than sex; there was sufficient evidence of malice or reckless indifference to Lawrence's rights to sustain a claim of punitive damages; the admission of evidence pertaining to CNF's net worth was harmless error; and the district court did not abuse its discretion in refusing to grant a new trial to CNF because of the incorrect financial information.[2]

---

[2] Lawrence also contends that CNF failed to properly preserve for appeal its motion for judgment as a matter of law. "A party is required to have raised the reason for which it is entitled to judgment as a matter of law in its Rule 50(a) motion before the case is submitted to the jury and reassert that reason in its Rule 50(b) motion after trial if the Rule 50(a) motion proves unsuccessful." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir. 1998). At the close of Lawrence's

## II.  STANDARD OF REVIEW

"We review a district court's denial of a motion for [judgment as a matter of law] de novo, applying the same standard used by that court."  Varner v. Nat'l Super Mkts., Inc., 94 F.3d 1209, 1212 (8th Cir. 1996).  We view all the facts and resolve any conflicts in favor of Lawrence.  Id.  We give Lawrence the benefit of all reasonable inferences, and we will not weigh, evaluate, or consider the credibility of the evidence.  Id.  We will affirm the denial of the motion for judgment as a matter of law if a reasonable jury could differ as to the conclusions that could be drawn.  Id.

## III.  ANALYSIS

Lawrence's Equal Pay Act (EPA) claim was based on her assertion that she was paid less than her successor in the trade show specialist position and that she was denied a benefit, the use of a company car, given to her successor.  CNF argues that Lawrence failed to establish a submissible case for her Equal Pay Act claim.  In particular, CNF contends that Lawrence did not establish the necessary element that she performed equal work to a relevant male employee.

---

case-in-chief CNF made an oral motion for judgment as a matter of law.  In its post-trial motion, CNF more thoroughly set out its argument that plaintiff failed to present a submissible case and that actions taken by CNF were based on legitimate business decisions unrelated to Lawrence's gender.  Lawrence contends that CNF's Rule 50(a) motion failed to give her notice of the grounds for the motion.  We conclude the district court did not abuse its discretion in finding that CNF sufficiently apprised the district court and Lawrence of its reasons for moving for judgment as a matter of law.  See Jarvis v. Sauer Sundstrand Co., 116 F.3d 321, 323 n.4 (8th Cir. 1997) (concluding that the grounds for judgment as a matter of law need not be stated with technical precision); see also Hurst v. Dezer/Reyes Corp., 82 F.3d 232, 237 (8th Cir. 1996) (noting the standard of review).

> The Equal Pay Act prevents an employer from discriminating between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1). In EPA litigation, "[t]he plaintiff has the burden of proving that the jobs involve 'equal work.'" Krenik v. County of Le Sueur, 47 F.3d 953, 960 (8th Cir. 1995). "To establish a violation of the Equal Pay Act, an employee must demonstrate that the employer paid male and female employees different wages for substantially equal work." Broadus v. O.K. Indust. Inc., 226 F.3d 937, 941 (8th Cir. 2000); see also Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 683 (8th Cir. 2001) ("A successful gender-based wage discrimination claim . . . requires the plaintiff to prove that her employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." (internal quotations and citations omitted)).

## A. Job Comparison

Lawrence's case was premised on the comparison of her work and pay to that of Nick Bonacorso, her immediate successor as the trade show specialist. Under the EPA, the job comparison may appropriately consider immediate predecessors or successors of the plaintiff. Broadus, 226 F.3d at 941-42; see also Peltier v. City of Fargo, 533 F.2d 374, 377 (8th Cir. 1976) ("The Equal Pay Act does not require that the jobs being compared be performed simultaneously but encompasses situations where an employee of one sex is hired for a particular job to replace an employee of

the opposite sex." (citation omitted)). CNF contends that trial testimony and evidence dispositively showed that Lawrence and Bonacorso were performing substantially different jobs, and that Bonacorso was, in fact, performing two jobs–trade show specialist and outside sales person.

"Whether two jobs are substantially equal 'requires a practical judgment on the basis of all the facts and circumstances of a particular case,' including factors such as level of experience, training, education, ability, effort, and responsibility." Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 709 (8th Cir. 2000)). "Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job." EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981) (citation omitted). "In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute." Id.

CNF argues that Bonacorso and Lawrence were not performing equal jobs. It argues that after CNF's Kansas City sales force was reduced, Bonacorso was performing two jobs–the trade show specialist and outside sales person. CNF argues that Lawrence's case fails because her only proffered comparison is between her pay while working exclusively on the trade show account, and Bonacorso's pay while he worked both the outside sales position and trade show specialist position after he assumed responsibility for the trade show account when Lawrence resigned in July 1998.

Drawing all reasonable inferences in favor of Lawrence, the non-moving party, we conclude it was not unreasonable for the jury to find that the work performed by Lawrence and Bonacorso required equal skill, work, and responsibility, and that the jobs were substantially equal. The evidence indicated that both Lawrence and Bonacorso kept accounts when they moved to the trade show specialist position.

Lawrence kept approximately eighty-five accounts, and Bonacorso kept approximately 100 outside accounts. The jury could have found this difference insubstantial given the fact that four months after Bonacorso took over the trade show position, CNF hired Terri Barrett as an inside sales person to assist Bonacorso with the trade show accounts. Barrett spent approximately forty percent of her time assisting Bonacorso with the trade show account, performing tasks such as preparing paperwork, passing and moving out notices, and promoting CNF to the exhibitors by informing them what CNF could do for them. Lawrence worked without an assistant throughout her tenure as the trade show specialist.

Both Lawrence and Bonacorso came into the trade show specialist position with experience in CNF's outside sales department. In the trade show specialist position, both received business cards with the designation trade show specialist, both referred to themselves as and considered themselves to be the trade show specialist in the Kansas City terminal. Both were responsible for developing, overseeing, and working the trade show accounts. Both worked closely with show vendors and show management at the trade show sites. This work included quoting rates, credit terms, preparing transportation agreements, and compiling lists of prospective customers for use as sales leads and displaying available services in brochures. Both kept some of their outside sales accounts when they moved to the trade show specialist position. While Bonacorso did keep more accounts, he also benefitted from having an assistant to help him with the trade show account, a benefit not afforded to Lawrence.

We conclude there was evidence to support the jury's conclusion that Lawrence and Bonacorso occupied positions requiring substantially equal skill, effort, and responsibility. "The resolution of factual disputes is the very function that juries are asked to perform, and it is not within the province of the district court to replace the jury's reasonable findings with its own." Hunt, 282 F.3d at 1030-31 (citation omitted). Accordingly, we affirm the district court's denial of CNF's motion for judgment as a matter of law.

B. Factors Other Than Sex

Because we find that Lawrence presented a submissible case under the Equal Pay Act, we turn now to CNF's affirmative defense that the pay disparity was justified by factors other than sex. "Equal Pay Act litigation . . . has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.'" County of Washington v. Gunther, 452 U.S. 161, 170 (1981). "Under the EPA, a defendant cannot escape liability merely by articulating a legitimate non-discriminatory reason for the employment action. Rather, the defendant must prove that the pay differential was based on a factor other than sex." Taylor v. White, 321 F.3d 710, 716 (8th Cir. 2003) (citing Gunther, 452 U.S. at 170).

CNF contends that several factors explain the pay differential between Lawrence and Bonacorso. CNF claims that Bonacorso was paid more than Lawrence before he ever took on the responsibilities of the trade show account. Bonacorso was paid $812 per week before he started the trade show account, and Lawrence was paid $756 when she resigned. CNF also contends that Bonacorso took a pay cut upon becoming a CNF salesperson while Lawrence received a pay increase from her prior, full-time employment with Emery Air Freight. CNF contends that it considered this salary history and that this factor influenced Bonacorso's higher starting salary. CNF also maintains that Bonacorso's raises reflected the fact that he had been on a full-time employment basis with CNF since 1988, and that it considered this full-time experience with the company a valuable knowledge base for its salespersons. This court has recognized that experience with a company may constitute a factor in the salary calculation. See Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1081-82 (8th Cir. 1999) (noting that length of service, education, or experience are factors other than sex upon which an employer may base salary decisions). Notwithstanding that consideration, we believe the jury was entitled to weigh this evidence against the size of the raises given Bonacorso and Lawrence.

CNF points to Lawrence's admission in her brief to this court that "the outside sales executives perform different duties than the trade show specialist. These are completely different jobs." CNF contends the pay differential must be disregarded because Lawrence has conceded that Bonacorso worked a completely different job until he took over the trade show account. However, the evidence indicated that Lawrence and Bonacorso performed substantially equal work while each occupied the trade show specialist position.

CNF also argues that trial testimony indicates that due to CNF's financial difficulties, CNF's Kansas City sales staff was reduced from six salespeople to five. CNF notes that Lawrence conceded that while Bonacorso replaced Lawrence, no one replaced Bonacorso. CNF argues this shows that when Lawrence resigned, Bonacorso kept his outside sales territory and assumed Lawrence's duties as trade show specialist. The evidence demonstrated that CNF hired Terri Barrett to assist Bonacorso in the trade show specialist position.

CNF argues that Bonacorso generated more revenue from the trade show account and outside accounts. Bonacorso's supervisor, Blair Benedict, testified that revenue generated was an important measure of sales performance. Fritz Gerwe, CNF's Kansas City division manager, testified that Bonacorso received raises because he improved his territory and he was a top producer. In contrast, Gerwe stated that Lawrence was not given raises at particular times because she did not produce her budgeted revenue. In support of this argument, CNF introduced exhibit 37 which purportedly detailed revenue generated by sales executives for the period of January 1997 to January 1998. However, the exhibit did not detail any comparison between individuals serving in the trade show specialist position, the job for which the comparison of Lawrence and Bonacorso is based. In addition, there were five months in exhibit 37 where no data was presented and no explanation was proffered for why it was missing.

CNF argues that it reassigned Lawrence's car based on factors other than sex. CNF contends the division needed a car for a salesman in Louisiana and CNF's financial problems prevented Fritz Gerwe from purchasing a new car for the Louisiana salesman and thus he had to find one within the company. Gerwe and Benedict selected Lawrence's car for reassignment because her revenue generation was the lowest in the division, she had the smallest number of outside accounts, and she covered the smallest sales territory. Lawrence contends that she was the only salesperson, either trade show specialist or outside sales, without a car.

The evidence indicated that Bonacorso's career trajectory followed that of Lawrence. Bonacorso succeeded her in the inside sales accounts position and the trade show specialist position. However, the pay scale of each was noticeably different. Both Lawrence and Bonacorso began the inside sales position making $625 per week. When Lawrence was promoted to the outside sales position, Nick Bonacorso replaced Lawrence in the inside sales account position. Bonacorso was also paid $625 per week in this position. In March 1997, Bonacorso was promoted to outside sales and received a pay raise to $706 per week. Lawrence accepted the trade show specialist position in May 1997 and continued to be paid $706 per week, with a raise in January 1998 to $726 per week, and in July 1998 to $756 per week. In September 1997, Bonacorso received a raise to $742 per week and was now making more money than Lawrence. In January 1998, Bonacorso was paid $772 per week, and received another raise in April 1998. When Bonacorso became the trade show specialist, he was paid $900 per week. Lawrence was making $756 a week when she left the trade show specialist position.

In light of all the evidence developed in this case, it would be a mistake for the court to usurp the role of the jury. This court has previously stated that

> [w]here conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which

-11-

inference shall be drawn. Only where all of the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict should the grant of a motion for judgment as a matter of law be affirmed. Thus, it is improper to overturn a jury verdict unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists *a complete absence of probative facts* to support the conclusion reached so that no reasonable juror could have found for the nonmoving party.

Hunt, 282 F.3d at 1029 (quotations and citations omitted) (emphasis in original). After reviewing the record, we conclude there was sufficient evidence to submit Lawrences's wage discrimination claim to the jury and that the jury's finding that Lawrence was impermissibly denied equal pay for equal work was reasonable.[3]

## IV. PUNITIVE DAMAGES

The jury awarded Lawrence $1 million in punitive damages to Lawrence, which the district court remitted to $200,000. CNF argues that Lawrence failed to make a submissible case for punitive damages and that it was entitled to judgment as a matter of law.

Plaintiffs who seek punitive damages in employment discrimination cases face a formidable burden. Webner v. Titan Dist. Inc., 267 F.3d 828, 837 (8th Cir. 2001). Both Title VII and the Missouri Human Rights Act (MHRA) permit the award of

---

[3] There is some dispute between the parties as to whether CNF preserved its right to challenge the jury's verdict on Lawrence's Title VII claim, in addition to the Equal Pay Act claim. We have previously held that the same standard applies to Equal Pay Act and Title VII wage discrimination claims. See EEOC v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir. 1992). Because we would affirm the Title VII verdict for Lawrence, we need not decide whether CNF waived its right to appeal this aspect of the judgment.

punitive damages in a narrow class of cases. Under Title VII, Lawrence was required to demonstrate that CNF engaged in discrimination "'with malice or with reckless indifference to [her] federally protected rights.'" Browning, 139 F.3d at 636 (quoting 42 U.S.C. § 1981(b)(1), and citing Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997)). Under the MHRA, Lawrence had the burden to show that CNF's 'conduct was "outrageous because of its evil motive or reckless indifference to the rights of others." Kientzy v. McDonnell Douglas Corp., 990 F.2d 1051, 1062 (8th Cir. 1993). "Punitive damages under Missouri law are appropriate only upon a showing of discriminatory conduct that would 'shock the conscience and cause outrage." Browning, 139 F.3d at 636-37 (quoting Karcher v. Emerson Elec. Co., 94 F.3d 502, 509 (8th Cir. 1996)).[4] To make this showing, Lawrence relied primarily on CNF's disparate treatment of her and Bonacorso, and allegedly sexist comments made by Gerwe to her and others.

Fritz Gerwe was the division manager when Lawrence worked at CNF, and he made the payroll decisions for the division. Gerwe claimed that initial pay was based on the individual's prior experience in sales. Lawrence alleged that Gerwe placed her in the 'woman's position.' Lawrence was initially hired for the inside sales position when her predecessor, Nancy Fowler, was fired. Lawrence alleged that Gerwe confided in his secretary that it would be good to have a woman in the sales position after Fowler was terminated in case Fowler brought a gender discrimination claim. Lawrence also contends that Gerwe asked CNF's general counsel if Bonacorso could initially be paid more than Lawrence. According to Lawrence, CNF's general counsel advised that it would be better to have each of them start at

---

[4] While Lawrence pled her gender discrimination under Title VII and under the Missouri Human Rights Act, it appears the case was submitted to the jury under Title VII. Nonetheless, this court has recognized that the standard for punitive damages under the MHRA is similar to that under Title VII. See Kimzey v. Wal-Mart Stores, Inc., 107 F.3d 568, 575 (8th Cir. 1997).

the same salary of $625 per week and then provide Bonacorso with a higher salary at his 180 day evaluation.

Lawrence also testified about comments made to her by Gerwe. For example, when an upset customer called and Lawrence commented to Gerwe that the man was difficult, Gerwe replied, "Why don't you divorce him like you do everybody else?" Transcripts Vol. II, at 156. Lawrence also testified that Gerwe told her about a ski trip during which he and friends were in bars "trying to pick up women who had been divorced . . . because . . . you know, those kind of women they're just looking for anything." Transcripts Vol II, at 156-57. Lawrence also claimed that Gerwe had complained about a tip she had left on a meal that was being charged to her expense account. After admonishing Lawrence to tip no more than 15 percent, Gerwe commented: "What, was the guy good-looking or something?" Transcripts Vol. II, at 157. Gerwe's former secretary, Cheryl Waterman, testified that Gerwe relayed to her a comment made by Tom Paulson, CNF's area vice-president. According to Waterman's testimony, Gerwe stated that Paulson had said: "Well, she makes damn good money for a woman." Transcripts Vol. II, at 265-66. Waterman also testified that Gerwe "seemed a little surprised that [another manager] would say something like that." Transcripts Vol. II, at 266. Finally Lawrence points to the fact that her company car was taken away and given to male sales representatives.

We agree with CNF that this evidence does not support a finding that CNF acted with malice or reckless indifference to Lawrence's federally protected rights. See Browning, 139 F.3d at 637. As we have stated before, "[t]his evidence is in stark contrast to the type of evidence that this court has found will support an award of punitive damages." Id. (citing Kimzey, 107 F.3d at 575-76 (noting that award of punitive damages was upheld when evidence that manager and supervisor repeatedly made crude, sexist comments to plaintiff, called her highly offensive names and

kicked her; plaintiff complained directly to the offending managers and others but not action was taken)). Accordingly, the award of punitive damages must be set aside.[5]

## VI. CONCLUSION

We affirm the district court's denial of CNF's motions for judgment as a matter of law and/or a new trial. We vacate the punitive damages award as unsupported by the evidence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5] Because we conclude that the punitive damage award must be vacated, we need not address CNF's argument that admission of inaccurate financial information about CNF mandates a new trial. Assuming the district court erred in admitting the inaccurate financial report, CNF has not demonstrated that the error affected any other aspects of the judgment, and therefore the district court properly denied CNF's motion for a new trial.