Tammra **LORENZEN**, Plaintiff,

v.

**GKN ARMSTRONG WHEELS, INC.**, Defendant.

No. C 03–3073–MWB.

United States District Court, N.D. Iowa, Central Division.

Nov. 22, 2004.

Mark D. Sherinian, Sherinian & Walker, PC, West Des Moines, IA, for Tammra Lorenzen.

Charles W. McManigal, Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, PC, Mason City, IA, Darrell, J. Isaacson, Yunek Isaacson, PLC, Mason, City, IA, for GKN Armstrong Wheels, Inc.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 980
 A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 980
 B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 982

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 983
 A. A Preliminary Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 983
 B. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 984
 C. Lorenzen's Equal Pay Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 985
 1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 985
 2. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 985

 3. *Analysis* .......................................................986
 D. *Lorenzen's Disability Discrimination Claim* ...........................987
 1. *Arguments of the parties* ......................................987
 2. *Analysis* ....................................................989
 a. *Actual disability* ...............................................989
 b. *Perceived disability* ............................................990
 E. *Lorenzen's Wrongful Discharge Claim* ..................................991
 1. *Arguments of the parties* ......................................991
 2. *Analysis* ...................................................992

III. *CONCLUSION* .................................................994

Was a recently-injured female employee constructively discharged and discriminated against in pay because of her sex, disability, or workers' compensation claim, or did she just quit in a huff when she did not get as big a raise as she expected? On its motion for summary judgment, the employer contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on all of the employee's claims. Although the employee now withdraws her claim of disparate treatment because of sex, she contends that she is entitled to present to a jury her remaining claims of violation of the Americans with Disabilities Act, the Equal Pay Act, and Iowa public policy. The court must decide whether this matter will proceed to trial on December 13, 2004, on any or all of the employee's remaining claims.

## I. INTRODUCTION

### A. Factual Background

The court will not attempt here an exhaustive dissertation of the undisputed and disputed facts in this case. Rather, the court will identify the core of undisputed facts and sufficient of the disputed facts to put in context the parties' arguments for and against summary judgment.

The parties agree that defendant GKN Armstrong Wheels, Inc., hired plaintiff Tammra Lorenzen as a press operator on February 14, 2000, and that her initial rate of pay was $8.86 per hour. Although the parties dispute the precise duties of a press operator, they apparently agree that those duties include loading and unloading wheel components to and from the press. Lorenzen's supervisor was Tim Helmers, and the "lead man" in her department was Jeff Hecht. Helmers's supervisor was Abdul Butt.

Lorenzen's performance was evaluated about sixty days after she was hired and about every ninety days thereafter. At each evaluation, she received an "average" score and the usual "single bump" in pay, amounting to about a twenty to forty cents per hour increase. However, Lorenzen contends that, in the early summer of 2001, Tim Helmers promised her that he would work to get her a "double bump," or two-step pay increase, at her next evaluation, which was due in mid-July. Indeed, Lorenzen contends that she was "promised" such a "double bump" by both Helmers and Butt, which GKN disputes. The parties dispute the precise criteria for receiving a "double bump," but agree that such pay increases were uncommon and were reserved for employees who performed outstanding work.

Lorenzen's July 2001 evaluation was delayed, because Tim Helmers was on vacation. On July 20, 2001, before the evaluation could be rescheduled, Lorenzen was injured on the job when a part kicked back out of the press and cut her left arm. Lorenzen's arm was stitched at the hospital emergency room and the treating physician told Lorenzen that she could return to work, subject to a ten-pound lifting

restriction. Lorenzen's injury was eventually recorded in GKN's OSHA 200 log and GKN's Safety Director, Kevin Smith, completed an Employee's Report of Injury for GKN's workers' compensation administrator on July 25, 2001. There does not appear to be any dispute that GKN's workers' compensation carrier paid workers' compensation benefits for Lorenzen's injuries.

Lorenzen did not return to work until July 26, 2001, at which time she saw the company physician, Dr. Moews. Dr. Moews advised Lorenzen that the ten-pound lifting restriction would continue, but that she could resume her regular duties after ten days. During the following days, Lorenzen was paid her regular pay for an eight-hour day, even though she was sometimes required to work only one or two hours a day on light duty. Lorenzen contends that this work schedule was to avoid reporting her injury as a "lost time" injury, because supervisors and managers received bonuses for elimination of "lost time" injuries. GKN, on the other hand, contends that this reduced work schedule at full pay was designed to compensate employees for the lack of workers' compensation benefits for the first three days lost after an injury. Lorenzen's light duty at this time consisted of sweeping floors, cleaning, and sometimes answering the phone. Although Lorenzen contends that GKN had a clerical position reserved for employees on light duty, GKN denies that contention. In any event, Lorenzen was never assigned to such a clerical position. Lorenzen also contends that her injury could have been accommodated at her press operator's job, within her lifting restrictions, by using aides and hoists, but GKN contends that such an accommodation was not "prudent" with Lorenzen's lifting restrictions and her need to keep her wound clean.

At some point, Lorenzen was assigned to drive a forklift as part of her "light duty." GKN contends that this assignment lasted only a few days before Lorenzen quit; Lorenzen contends that it lasted almost three weeks. Lorenzen also complains that driving a forklift was dangerous and "scary," because she had received no training on the machine, she had difficulty operating the controls with her injured arm in a splint, and the vibration of the machine caused pain in her injured arm. GKN contends that operating a forklift was within Lorenzen's medical restrictions and that she has admitted as much. Although Lorenzen contends that she made "daily" complaints about her problems with driving the forklift, GKN contends that, on the only occasion that she complained, Helmers gave her two days off without pay.

On or about August 10, 2001, Lorenzen finally had her delayed July 2001 evaluation. Instead of getting the expected "double bump," Lorenzen received only another "average" evaluation and a "single bump" of $0.39 per hour. In the course of the evaluation interview, Lorenzen contends that Butt and Helmers told her that she should thank them for even getting paid at all after her injury and also told her to go home and think about whether she wanted her job or not. She contends, further, that Butt told her that Brian Aanonson, a male employee, had received a "double bump," but that was because he was a good worker and hadn't gotten hurt. Lorenzen contends that she is just as competent and did her job just as well as Aanonson. Butt and Helmers vehemently deny making any of the comments attributed to them by Lorenzen. However, Helmers does acknowledge that Butt told Lorenzen that, because she was unhappy, she should go home and consider what she wanted to do. Lorenzen contends that she did go home and thereafter determined

that she could no longer work for a company that demanded thanks for letting her keep her job after she had been injured.

Lorenzen admits that she saw the company doctor again on August 13, 2001, at which time the doctor raised her lifting restriction to twenty pounds and advised her to wear a splint for two more weeks when she was working. She also admits that she worked on August 14, 2001, although she contends that that was the day of the unpleasant conference with Butt and Helmers. She does not dispute that she left work during her shift on August 14, 2001, but contends that it was after Butt had ordered her to go home and think about whether she wanted to keep her job. It is undisputed that Lorenzen did not tell anyone that she would not be coming back, that she did not return to work as scheduled or call in any excuse on August 15, 16, and 17, 2001, or that, pursuant to company policy, GKN considered Lorenzen to have quit voluntarily after three consecutive absences. It is also undisputed that Lorenzen did not attend a scheduled exit interview on September 4, 2001, with GKN's Human Resources Manager, Mike Perrine.

Similarly, it is undisputed that Lorenzen never made a complaint of disability or sexual discrimination to any designated company representative. However, Lorenzen contends that such a report or any further attempt to work out her dispute would have been futile, where she had made clear to Helmers and Butt that she would quit if things didn't change, but they told her that she should go home and decide whether she wanted to keep her job.

Lorenzen contends that she subsequently found other employment as a medical transcriptionist, but that she has permanent impairments resulting from her injury at GKN. The court will discuss Lorenzen's allegations of impairments in its analysis of her claim of disability discrimination.

### B. Procedural Background

Lorenzen filed her Complaint in this action on August 19, 2003, alleging sex discrimination in violation of the Equal Pay Act (EPA) (Count I) and Title VII of the Civil Rights Act of 1964 (Count II); disability discrimination in violation of the Americans with Disabilities Act (ADA) (Count III); and wrongful discharge in violation of Iowa public policy, based on her allegation that she was discharged because of her workers' compensation claim (Count IV). In its Answer, filed October 20, 2003, GKN denied all of Lorenzen's claims. GKN was granted leave to file an Amended Answer on July 28, 2004, to assert certain affirmative defenses.

GKN's motion for summary judgment, which is now before the court, followed on August 11, 2004. In that motion, GKN seeks summary judgment in its favor on all of Lorenzen's claims. By order dated August 20, 2004, the court set a schedule for supplemental briefing of GKN's motion for summary judgment to address the impact of *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), on analysis of disparate treatment claims. Unfortunately, owing to a clerical error, that order was never conveyed to the parties. Consequently, on September 9, 2004, the court filed another order setting a briefing schedule and directing the parties to respond to several specific questions concerning the proper analysis of disparate treatment claims. GKN filed its supplemental brief as required on September 20, 2004, and Lorenzen resisted GKN's motion for summary judgment on October 11, 2004. In her resistance, Lorenzen expressly withdrew her Title VII claim of disparate treatment because of sex. However, she still contends that she is entitled to proceed on her remaining claims under

the EPA, the ADA, and Iowa public policy. GKN filed a reply in further support of its motion for summary judgment on October 18, 2004.

The court set oral arguments on GKN's motion for November 18, 2004, the first available date in its crowded schedule. At the oral arguments, Lorenzen was represented by Mark D. Sherinian of Sherinian & Walker, P.C., in West Des Moines, Iowa. GKN was represented by C.W. McManigal, on the brief, and Darrell J. Isaacson, on both the brief and oral arguments. Mr. McManigal and Mr. Isaacson are both with Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, P.L.C., in Mason City, Iowa.

Disposition of GKN's motion for summary judgment is now of some urgency, because this matter is set for trial on December 13, 2004.

## II. LEGAL ANALYSIS

### A. A Preliminary Matter

As a preliminary issue, the court notes that it ordered supplemental briefing on the impact of *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), on the proper analysis of disparate treatment claims. However, the court finds that, on full submission of GKN's motion for summary judgment, there are several reasons why this case no longer warrants consideration of that question. First, Lorenzen has withdrawn the Title VII sex discrimination claim to which the statute at issue in *Desert Palace*, 42 U.S.C. § 2000e–2(m), expressly applies. *See* 42 U.S.C. § 2000e–2(m) (under Title VII, "an

unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"). Second, the court has found no authority for applying § 2000e–2(m) to a claim of sex discrimination in pay under the Equal Pay Act, not least because the Equal Pay Act is a part of the Fair Labor Standards Act, not a part of Title VII. *See* 29 U.S.C. § 206(d) (Equal Pay Act prohibiting sex discrimination in pay as part of the Fair Labor Standards Act).[1] Finally, although there is authority for applying § 2000e–2(m) to disability discrimination claims under the ADA, notwithstanding that the statute does not expressly apply to disability discrimination or the ADA, *see, e.g., Doane v. City of Omaha*, 115 F.3d 624, 629 (8th Cir.1997) (recognizing that § 2000e–2(m) applies in actions brought pursuant to the ADA), *overruled on other grounds by Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *accord Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337 (2d Cir.2000) (noting that § 2000e–2(m) "does not, by its terms, apply to violations of the ADA, [but] nothing in either the language or purpose of either statute suggests that Congress intended different causation standards to apply to the different forms of discrimination"), there are insuperable barriers to Lorenzen's ADA claim before the court reaches the question of the proper analysis of the causation requirement. Therefore, the court will tarry no longer

---

1. It is interesting to note that, while Equal Pay Act standards apply to pay discrimination claims under Title VII, *see, e.g., Tenkku v. Normandy Bank*, 348 F.3d 737, 741 (8th Cir. 2003) ("Title VII wage discrimination claims based on unequal pay for equal work are analyzed under Equal Pay Act Standards."); *Inglis v. Buena Vista Univ.*, 235 F.Supp.2d 1009, 1018 (N.D.Iowa 2002) ("'Where a

claim is for unequal pay for equal work based upon sex, the standards of the Equal Pay Act apply whether the suit alleges a violation of the Equal Pay Act or of Title VII.'") (quoting *McKee v. Bi–State Dev. Agency*, 801 F.2d 1014, 1018–19 (8th Cir.1986)), the court has found no authority applying the Title VII standard in 42 U.S.C. § 2000e–2(m) to Equal Pay Act claims.

here over the impact of *Desert Palace* on the analysis of disparate treatment claims. Instead, the court will turn its attention to a brief survey of the standards applicable to GKN's motion for summary judgment, then to the application of those standards to the critical issues involved in this case.

### B. Standards For Summary Judgment

As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick*, 90 F.3d at 1377 (same).

■ Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

■ If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment dis-

crimination cases. *See, e.g., Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)).

The court will apply these standards to GKN's motion for summary judgment on Lorenzen's remaining claims.

## C. Lorenzen's Equal Pay Act Claim

### 1. Arguments of the parties

GKN argues that, even applying the plaintiff-friendly "some males made more" standard adopted by this court in *Hennick v. Schwans Sales Enterprises,* 168 F.Supp.2d 938 (N.D.Iowa 2001), for gender discrimination claims under the EPA, Lorenzen's EPA claim fails, because her claim is not that she received a smaller "bump" than similarly situated males, but that she didn't receive a promised, but rare "double bump" at her last evaluation. Moreover, if Brian Aanonson is offered as a comparator, because he got a "double bump," GKN contends that he was not "similarly situated," because he had greater responsibility and performed various jobs that Lorenzen did not, had more seniority, and had significantly more production output.

In response, Lorenzen contends that Aanonson is a proper comparator, but that "[s]he never received the double bump because she had gotten hurt, while Brian Aanonson had not been injured so he did receive the double bump." Plaintiff's Brief In Resistance To Defendant's Motion For Summary Judgment (docket no. 21, attachment # 2) at 21. Lorenzen argues that Aanonson may have had seniority over her, but only by five months, and GKN has never produced any documentation of superior performance by Aanonson apart from the evaluations by the person who allegedly discriminated against her on the basis of sex. Lorenzen points out that another male employee, Jeff Hecht, had also received a double bump, but no female employee of her department has ever received a double bump.

### 2. Applicable Law

The Eighth Circuit Court of Appeals recently summarized the analysis of a claim of unequal pay based on sex pursuant to the Equal Pay Act as follows:

The EPA prohibits an employer from paying employees of one sex less than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). The plaintiffs have the burden to prove their employer paid them less than male employees for substantially equal work. *Lawrence v. CNF Transp., Inc.,* 340 F.3d 486, 491 (8th Cir.2003). Whether employees perform substantially equal work "requires a practical judgment on the basis of all the facts and circumstances of a particular case, including factors such as level of experience, training, education, ability, effort, and responsibility." *Id.* at 492 (citation omitted). This analysis does not depend "on job titles or classifications[,] but on the actual requirements and performance of the job." *Id.* (citation omitted). We are required to "compare the jobs in question in light of the full factual situation and the [EPA's] broad remedial purpose." *Id.* (citation omitted). When evaluating the amount of effort required to perform a job, we consider "the physical or mental exertion necessary to the performance of a job," and when evaluating the amount of responsibility a job entails, we consider "the degree of accountability required in performing a job." *Berg v. Norand Corp.,* 169 F.3d 1140, 1146 (8th Cir.1999) (citation omitted). We are not particularly interested in a plaintiff's conclusory allegations about which jobs are equal. *See id.* (holding conclusory affidavit testimony that two jobs are equal does not establish a prima facie case under the

EPA). Instead, we review the actual requirements and performance of the jobs in question.

*Younts v. Fremont County, Iowa,* 370 F.3d 748, 752–53 (8th Cir.2004).

Applying this analysis, the court in *Younts* upheld summary judgment in favor of the employer on the plaintiffs' Equal Pay Act claim, because the plaintiffs had " 'merely ma[d]e conclusory allegations about the similarity of the jobs which are not sufficient to create a genuine issue of fact to avoid summary judgment.' " *Id.* at 753 (quoting the district court's decision). The appellate court found the evidence presented to be "woefully deficient to allow a proper analysis of the skill, effort and responsibility required to perform" the jobs of the plaintiffs and the comparators. *Id.*

### 3. *Analysis*

In this case, the court finds that both parties have made "woefully deficient" submissions in support of their contentions about whether or not Aanonson was a male employee who performed substantially equal work, but received a larger raise. First, like the plaintiffs in *Younts,* Lorenzen has made no more than " 'conclusory allegations about the similarity of the jobs which are not sufficient to create a genuine issue of fact to avoid summary judgment.' " *Id.*[2] Similarly, GKN has failed to meet its initial burden on its motion for summary judgment "of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue," *see Hartnagel,* 953 F.2d at 395, where GKN has provided only equally conclusory assertions that Aanonson did more and better work than Lorenzen, had more and different responsibilities than she did, or had seniority that would warrant a double bump under company policy. GKN has not, for example, produced or pointed to any objective documentation of Aanonson's supposedly superior performance. Under the circumstances, the present record is "woefully deficient to allow a proper analysis of the skill, effort and responsibility required to perform" Lorenzen's and Aanonson's jobs. *Younts,* 370 F.3d at 753.

The deficiencies in the showings made by both sides leave the court with a dilemma over which side should lose on the Equal Pay Act claim. By letter dated November 17, 2004, the court requested that the parties address this dilemma in their oral arguments. In response, Lorenzen sought leave to file an affidavit in which she avers that she and Mr. Aanonson performed the same jobs, but she performed that job just as well as he did. Although the court granted Lorenzen leave to file the affidavit, that affidavit merely repeats the conclusory allegations that the court found were insufficient above, so it does nothing to resolve the dilemma facing the court. At the oral arguments, the court also granted GKN leave to file a supplement of its own to respond to Lorenzen's eleventh-hour affidavit. On Monday, November 22, 2004, GKN filed a Supplement To Appendix con-

**2.** Furthermore, a fair reading of Lorenzen's own argument would be that Aanonson got a "double bump" because he had not been injured, while Lorenzen had been, not because he was male and Lorenzen was female. *See* Plaintiff's Brief In Resistance To Defendant's Motion For Summary Judgment (docket no. 21, attachment # 2) at 21 (asserting that Lorenzen "never received the double bump because she had gotten hurt, while Brian Aanonson had not been injured so he did receive the double bump"). Thus, Lorenzen's own argument does not suggest sex discrimination in compensation in violation of the Equal Pay Act, *see* 29 U.S.C. § 206(d) (prohibiting discrimination in wages "on the basis of sex"), although it may strongly suggest discrimination for filing a workers' compensation claim in violation of Iowa public policy.

sisting of two employee evaluations for Brian Aanonson, dated March 23, 2002, and July 23, 2001, respectively. The March 23, 2002, evaluation, of course, is irrelevant, because it is dated more than seven months after Lorenzen quit, so that it provides no basis for a side-by-side comparison of Lorenzen's and Aanonson's jobs or performance. The July 23, 2001, evaluation is at least from a period when both Lorenzen and Aanonson were employed by GKN—indeed, it shows that Aanonson worked in the same department and was given the "double bump" that Lorenzen was denied during Lorenzen's last evaluation period. However, the court is still not convinced that this evaluation satisfies GKN's burden, as the movant for summary judgment, "of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue," *see Hartnagel*, 953 F.2d at 395, because it is nothing more than a conclusory assertion by the same people who allegedly discriminated against Lorenzen that Aanonson did more and better work than Lorenzen, where it is signed only by Helmers and Butt. Thus, GKN has still not produced or pointed to any *objective* documentation of Aanonson's supposedly superior performance.[3]

The court concludes that the dilemma must be resolved on the basis of the applicable burdens. As the court explained in *Younts*, "The plaintiffs have the

burden to prove their employer paid them less than male employees for substantially equal work." *Id.* at 752 (citing *Lawrence*, 340 F.3d at 491). Lorenzen has plainly not met that burden on the present record. Moreover, in resisting a motion for summary judgment, the non-moving party is required by Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In *Younts*, the court found that conclusory allegations of job equivalence were insufficient to generate the necessary genuine issues of material fact, and such conclusory allegations are all that Lorenzen has offered in this case. *Younts*, 370 F.3d at 753. Because Lorenzen has failed to satisfy both her ultimate burden on her Equal Pay Act claim and her burden in resisting GKN's motion for summary judgment, the court concludes that the proper course is to grant GKN's motion for summary judgment on Lorenzen's Equal Pay Act claim.

### D. *Lorenzen's Disability Discrimination Claim*

#### 1. *Arguments of the parties*

GKN also contends that it is entitled to summary judgment on Lorenzen's disabili-

---

**3.** Moreover, were the court permitted to weigh the evidence as the trier of fact, something the court is not permitted to do on a motion for summary judgment, *see Quick*, 90 F.3d at 1376–77 (on a motion for summary judgment, the court is not to weigh the evidence and determine the truth of the matter, but to determine only whether there are genuine issues for trial); *Johnson*, 906 F.2d at 1237 (same), the court would find Aanonson's July 23, 2001, evaluation well short of the kind of evidence that would convince the court that Aanonson's performance was so superior to Lorenzen's that it justified a differ-

ence in treatment. Specifically, Lorenzen's last evaluation shows that she had an "overall evaluation" of 304, which placed her in the "Doing an average job" category (221–330), *see* Defendant's Appendix, Exhibit 8, while Aanonson's "overall evaluation" for the comparable period is 332, which just barely placed him in the "Definitely above average" category (331–440), and well short of the "outstanding" category (441–550). *See* Defendant's Supplement To Appendix. As noted above, the parties appear to agree that "outstanding" performance was a criterion for a "double bump."

ty discrimination claim, because Lorenzen is not "disabled" within the meaning of the ADA. This is so, GKN contends, because Lorenzen's impairment of her left, non-dominant hand does not substantially limit Lorenzen's ability to work or any other major life activities. GKN contends that Lorenzen's lifting restriction is not sufficient, standing alone, to establish substantial impairment, nor is that restriction combined with any other limitations sufficient to establish a "disability." Even if Lorenzen could generate a genuine issue of material fact on the question of whether she is disabled, GKN contends that her allegation that GKN failed to accommodate her fails as a matter of law. This is so, GKN argues, because GKN was only required to provide "reasonable" accommodation, and it is undisputed that, following her injury, Lorenzen was placed on light duty work within her medical restrictions. GKN was not required to provide the clerical position that Lorenzen preferred, even if such a position had been available. Finally, GKN contends that there is no evidence that her supposed disability was the reason for any adverse employment action, because Lorenzen voluntarily quit and was not constructively discharged.

In resistance to this part of GKN's motion for summary judgment, Lorenzen contends that she was "disabled" within the meaning of the ADA, either because of an actual disability or because GKN perceived her to be disabled. She points out that she is still only able to lift ten pounds with her left arm and that, at the time of her termination, she was limited to lifting twenty pounds. Thus, she contends that she has permanent lifting restrictions. Moreover, she contends that the lifting restrictions combined with medical diagnoses and restrictions on major life activities are sufficient to establish a "disability." She contends that, in addition to or as a result of her lifting restrictions, she has limitations in major life activities, in-cluding household chores, dressing, exercising, manual tasks, and working. She also contends that she suffers from tingling, numbness, and pain in her left arm that is sufficient to affect her ability to use that arm. The cumulative effect of her impairments, she contends, is that she is substantially limited in the major life activity of performing manual tasks. Lorenzen also points out that she is restricted from any employment that requires heavy lifting, such as her former job as a press operator, and is instead limited to light and sedentary work.

As to perceived disability, Lorenzen contends that GKN would not have assigned her to light duty positions if GKN had not perceived her to be disabled in the major life activity of lifting. She contends that the proffered "accommodation" of driving a forklift was actually an avenue to further discrimination, because she could not operate the forklift effectively with her arm in a sling. She contends, further, that the assignment to forklift driving was for the purpose of forcing her to resign. She also contends that she was never offered the accommodation of using aides and hoists to perform her press operator job. Lorenzen contends that Butt's comments comparing her to Aanonson, on the basis that he had not gotten hurt, but she had, demonstrated that Butt perceived her to be disabled. Finally, she contends that she was perceived to be disabled, because GKN's managers perceived her injury to be a threat to their bonuses, which were based, in part, on keeping injuries down.

In reply, GKN argues that there is no submissible issue of perceived disability here, because GKN had no jobs that were considered exclusively light duty, but GKN nevertheless followed Lorenzen's medical restrictions by assigning her tasks within those restrictions. GKN also argues that there is no submissible claim of failure to

accommodate, because there is no duty to accommodate where there is no submissible claim of actual or perceived disability. GKN also contends that any perception it had that Lorenzen was substantially limited in performing major life activities was based on its understanding of Lorenzen's medical restrictions, not on myths or stereotypes. GKN argues that it properly considered Lorenzen disqualified, at least temporarily, from her press operator job, but did not consider her disqualified from a wide range of jobs.

### 2. Analysis

■ To establish a *prima facie* case of disability discrimination under the ADA, Lorenzen " 'must show that she is disabled within the meaning of the Act; [that] she is qualified to perform the essential functions of her job with or without reasonable accommodation; and [that] she suffered adverse employment action because of her disability.' " *Kincaid v. City of Omaha,* 378 F.3d 799, 804 (8th Cir.2004) (quoting *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1072 (8th Cir.1998), in turn quoting *Webb v. Mercy Hosp.,* 102 F.3d 958, 959–60 (8th Cir.1996)). The first element requires Lorenzen to show—or at this juncture, show that there is a genuine issue of material fact—that she is either actually disabled or was "regarded as" disabled by GKN. *See* 42 U.S.C. § 12102(2) (defining disability as including having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" and "being regarded as having such an impairment"). Here, however, Lorenzen has failed to generate a genuine issue of material fact as to either actual disability or perceived disability.

### a. Actual disability

■ As the Eighth Circuit Court of Appeals recently explained,

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *see Aucutt v. Six Flags Over Mid–Am., Inc.,* 85 F.3d 1311, 1318–19 (8th Cir. 1996). Determining whether a major life activity has been substantially limited is an individualized inquiry. Thus, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

*Brunke v. Goodyear Tire and Rubber Co.,* 344 F.3d 819, 821 (8th Cir.2003). Furthermore,

In *Toyota Motor Manufacturing, Kentucky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681. Although *Williams* concerned a limitation . with regard to the performance of manual tasks, we recently explained that its holding applies to ADA claims concerning non-manual-task limitations. *Philip v. Ford Motor Co.,* 328 F.3d 1020, 1025 (8th Cir.2003); *Fenney v. Dakota, Minn. & E. R.R. Co.,* 327 F.3d 707, 715 (8th Cir.2003). In [each] case, therefore, we will consider whether each of [the plaintiff's] impairments "prevents or severely restricts" [the plaintiff] from performing a major life activity. *See Williams,* 534 U.S. at 198,

122 S.Ct. 681. In fulfilling this inquiry we should also consider (1) the nature and severity of [the plaintiff's] impairment, (2) its duration or anticipated duration, and (3) its long-term impact. *See* 29 C.F.R. § 1630.2(j)(2)(2002); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir.2001).

*Wood v. Crown Redi–Mix, Inc.*, 339 F.3d 682, 685 (8th Cir.2003).

▪ Lorenzen contends that, between her lifting restrictions, numbness, and sensitivity to vibrations, she is substantially limited in the major life activities of exercising and household chores, because she is unable to lift simple things like a laundry basket, push a lawn mower, carry in groceries, or undress herself. Even if a limitation in a single major life activity is not sufficient, Lorenzen argues that the cumulative impact of the limitations on all of these major life activities is substantially limiting. The record evidence is that the impairment to Lorenzen's arm, although it now appears to be permanent, is mild or moderate, not severe. *See Wood*, 339 F.3d at 685 (considering "nature and severity" of the impairment, duration, and long-term impact). Indeed, Lorenzen admits that, on June 13, 2002, she was diagnosed with only a five-percent impairment of the upper left extremity. Such a mild impairment may be inconvenient at times, but it is not "substantially limiting."

▪ Lorenzen also contends that she is substantially limited in the major life activity of working, because she is precluded from any employment that requires heavy lifting and can only do light or sedentary work. Her numbness, she contends, would also prevent her from any employment involving heat or cooking, while her sensitivity to vibration precludes her from any job requiring use of power tools or equipment. The court concludes that none of these restrictions, either separately or cumulatively, amounts to substantial impair-

ment under the applicable standard. As the Eighth Circuit Court of Appeals explained in *Wood,*

> A plaintiff alleging a substantial limitation in the ability to work must demonstrate an inability "to work in a broad class of jobs," *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and show that "he has suffered a significant reduction in meaningful employment opportunities" as a result of his impairments, *Philip*, 328 F.3d at 1024. "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (quoting *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)).

*Id.* at 686. Here, accepting Lorenzen's allegations as true, she may have identified a "broad class of jobs" from which she is precluded by her limitations, jobs involving heavy lifting or power tools and equipment, but she has failed to generate a genuine issue of material fact that she is also "suffer[ing] a significant reduction in meaningful employment opportunities" as a result of her impairments. *Id.* Lorenzen found employment as a medical transcriptionist, which she concedes is within her capabilities, within six weeks of leaving her job at GKN. She does not assert and has pointed to no evidence that jobs within her limitations are not generally available within a reasonable geographical area.

The court concludes that Lorenzen is not actually disabled within the meaning of the ADA as a matter of law.

### b. *Perceived disability*

▪ The "regarded as disabled" provision of the ADA "is intended to combat the

effects of 'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir. 1995). However, an employer's mere awareness of an employee's medical problems does not establish that the employer regarded the employee as disabled. *Simonson v. Trinity Regional Health Sys.,* 336 F.3d 706, 709 (8th Cir.2003). Nor does an employer regard an employee as disabled simply by reasonably relying on restrictions imposed by a treating physician. *See, e.g., Ollie v. Titan Tire Corp.,* 336 F.3d 680, 686–87 (8th Cir.2003) (distinguishing proper reliance on medical restrictions, as explained in *Wooten,* 58 F.3d at 386, *Conant v. City of Hibbing,* 271 F.3d 782, 785–86 (8th Cir.2001), and *Brunko v. Mercy Hosp.,* 260 F.3d 939, 942 (8th Cir. 2001), from improper reliance on the employer's own interpretations of the doctor's advice and its own opinion about the plaintiff's ability to perform essential functions of any available job). Rather, "[t]o succeed on this theory, [Lorenzen] must show that [GKN] 'mistakenly believe[d] that [she] ha[d] a physical impairment that substantially limits one or more major life activities,' or, alternatively, that it 'mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Schuler v. SuperValu, Inc.,* 336 F.3d 702, 704 (8th Cir.2003) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)).

Lorenzen has failed to generate a genuine issue of material fact on either alternative. Lorenzen's protestations aside, there is no evidence in the record that GKN ever did anything but assign Lorenzen temporary work, which GKN reasonably believed was within her medical restrictions, with the expectation that she would eventually return to her regular duties. *See Simonson,* 336 F.3d at 709 (an employer's

awareness of medical problems does not establish that the employer regarded the employee as disabled); *Ollie,* 336 F.3d at 686–87 (an employer may reasonably rely on medical restrictions imposed by a treating physician without perceiving the employee to be disabled). Upon the present record, GKN is entitled to summary judgment on Lorenzen's perceived disability claim as well.

### E. *Lorenzen's Wrongful Discharge Claim*

Lorenzen's final claim is that she was wrongfully discharged in violation of Iowa public policy because she had filed a workers' compensation claim. GKN contends that it is entitled to summary judgment on this claim, as well.

### 1. *Arguments of the parties*

GKN initially argued that Lorenzen's wrongful discharge claim was barred by the applicable two-year statute of limitations. In its reply brief, however, GKN conceded that *Vrban v. Deere & Co.,* 129 F.3d 1008 (8th Cir.1997), establishes that the applicable statute of limitations for a wrongful discharge claim is five years. GKN argued in its reply that it is nevertheless entitled to summary judgment on this claim because, as it had argued in its opening brief, GKN neither discharged nor constructively discharged Lorenzen. Therefore, the court will summarize GKN's argument for summary judgment on Lorenzen's contention that she was constructively discharged. GKN argues that Lorenzen abruptly quit when she became upset over not receiving a "double bump" raise, but that loss of a single promotional opportunity will not support a finding of a constructive discharge. GKN also contends that Lorenzen walked off the job without telling anyone in management that

she was quitting or giving GKN any reasonable opportunity to work things out.[4]

In response to these arguments, Lorenzen contends that she reasonably believed that there was no chance for fair treatment, so she was constructively discharged. She argues that she was told, prior to her injury, that she would receive a "double bump" by both Helmers and Butt, but instead of getting that raise, Butt told her she should thank him for even getting paid after her injury. She contends that Butt then "rubbed her face in it," by telling her that Aanonson had received a "double bump." She also contends that she told Helmers and Butt that she was thinking about quitting, because she was not being treated fairly, which put GKN on notice that its conduct could reasonably force her to quit, but that Helmers and Butt reacted with complete indifference, and worse, Butt told her to go home and think about whether she wanted to keep her job. Under the circumstances, Lorenzen contends that it was reasonable for her to believe that there was no reasonable opportunity to work things out.

### 2. Analysis

 As the Eighth Circuit Court of Appeals recently explained,

> Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit. *Klein [v. McGowan]*, 198 F.3d [705] at 709 [(8th Cir.1999)]. "[I]ntolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings." *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130 (8th Cir. 1997) (internal citation and quotations omitted). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. *Id.* Second, "the employer's actions must have been taken with the intention of forcing the employee to

---

4. GKN argues for the first time in its reply brief that there is no evidence that GKN forced Lorenzen to quit or that her quitting was a reasonably foreseeable result of its conduct. However, the court will not consider arguments raised for the first time in a reply brief. *Cf. United States v. Carrillo*, 380 F.3d 411, 413 n. 3 (8th Cir.2004) (the appellate court typically does not consider an argument first raised in a reply brief absent some reason for failing to raise an argument in an opening brief). GKN's initial reliance on the statute of limitations argument as the primary ground for summary judgment on Lorenzen's wrongful discharge claim does not provide an excuse for failing to consider other grounds for summary judgment on the claim. Moreover, GKN's initial arguments concerning insufficiency of Lorenzen's claim of constructive discharge—on the specific grounds that loss of a promotional opportunity is insufficient to establish a constructive discharge and that Lorenzen failed to give GKN a reasonable opportunity to work things out—do not, by any reasonable reading, open the door to consideration of GKN's entirely different argument that there was no constructive dis-

charge because there is no evidence that GKN forced Lorenzen to quit or that her quitting was a reasonably foreseeable result of GKN's conduct. Finally, Lorenzen's mention of the requirement that the employer either forced the employee to quit or that the employee's quitting was a foreseeable result of the employer's conduct does not open the door to GKN's belated contentions, because Lorenzen's mention of these requirements merely completed the picture of the requirements for the claim. Her actual arguments in opposition to summary judgment were targeted to the arguments that GKN had made in its opening brief. Having said all that, were the court to consider GKN's belated arguments, for essentially the same reasons the court finds a reasonable jury could find that Lorenzen was justified in believing that there was no reasonable opportunity to work things out with GKN, it was also reasonably foreseeable that Lorenzen would quit when faced with the conduct the record reasonably suggests that GKN engaged in. Therefore, GKN would not be entitled to summary judgment even on the arguments it raises for the first time in its reply brief.

quit." *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981). We have held, however, "[w]hen an employer denies a conscious effort to force an employee to resign ... the employer must necessarily be held to intend the reasonably foreseeable consequences of its actions." *Hukkanen v. Int'l Union of Operating Eng'rs Hoisting & Portable Local No. 101,* 3 F.3d 281, 285 (8th Cir.1993). Finally, "to act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly"; therefore, "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 498 (8th Cir.1995).

*Baker v. John Morrell & Co.,* 382 F.3d 816, 829 (8th Cir.2004).

 GKN is correct that "losing a single promotional opportunity is not a sufficient reason to quit or to constitute a constructive discharge." *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1160 (8th Cir.1999). However, Lorenzen's contention is not merely that she lost a promotional opportunity, but that she was denied a benefit that she had been *promised.* If a jury believes her contention that she was promised the "double bump," a reasonable jury could also find that denying her that promised benefit was intolerable. *Cf. West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 497 (8th Cir.1995) (promising an employee a job in another city, then withdrawing the opportunity, because the employee had filed an initial charge of sex and age discrimination, "could amount to constructive discharge depending upon the extent of the employee's reasonable reliance"). Moreover, loss of the "double bump" is not all that is at issue here. Lorenzen's claim of wrongful discharge is not premised only, or even primarily, on loss of the "double bump" raise; it is premised on her contention that it is intolerable for an employer to tell an employee that she should thank the employer that she still has a job when she has been injured on the job and that injury has cost the employer money. A reasonable juror could likewise find that such conduct rendered an employee's working conditions intolerable.

GKN also argues that Lorenzen failed, as a matter of law, to give GKN a reasonable opportunity to work out the problem. Lorenzen, however, contends that any attempt to work out the problem appeared futile, when Helmers and Butt told her that she should be glad she had a job after getting injured and told her to go home and think about whether she wanted to keep her job. She also contends that she did give GKN an opportunity to work things out by telling Helmers and Butt on August 10, 2001, that she was considering quitting because of unfair treatment, then returning to work on August 14, 2001. She contends that she left on August 14, 2001, when it became clear that there was no change in the way she was being treated.

 The Eighth Circuit Court of Appeals has repeatedly recognized that, " 'If an employee quits because [s]he reasonably believes there is no chance of fair treatment, there has been a constructive discharge,' " but with the caveat that " '[a]n employee must, however, grant [her] employer a reasonable opportunity to correct the intolerable condition before [s]he terminates [her] employment.' " *Turner v. Honeywell Fed. Mfg. & Techs., L.L.C.,* 336 F.3d 716, 724 (8th Cir.2003) (quoting *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 617 (8th Cir.2000)); *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 574 (8th Cir.1997) (same); *accord Van Meter Indus. v. Mason City Human Rights Comm'n,* 675 N.W.2d 503, 513

(Iowa 2004) (also requiring an employee to give an employer a reasonable opportunity to work things out). The court concludes that Lorenzen has generated a genuine issue of material fact as to whether she gave GKN a reasonable opportunity to work things out by pointing to evidence that she returned to work on August 14, 2001, in the hope of a change in her treatment. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Therefore, GKN is not entitled to summary judgment on Lorenzen's wrongful discharge claim.

### III. CONCLUSION

Lorenzen has withdrawn her claim of sexual discrimination in violation of Title VII, so GKN's motion for summary judgment will be granted as to Count II of Lorenzen's Complaint. GKN has also demonstrated that it is entitled to summary judgment on Lorenzen's Equal Pay Act Claim in Count I, because Lorenzen has failed to generate a genuine issue of material fact as to whether any similarly situated male performed only substantially equal work, but was given a "double bump" raise that she was denied. GKN is also entitled to summary judgment on Lorenzen's disability discrimination claim pursuant to the ADA in Count III, because, as a matter of law, Lorenzen was neither actually disabled nor perceived to be disabled. On the other hand, GKN is not entitled to summary judgment on Lorenzen's claim of wrongful discharge in violation of public policy in Count IV, because Lorenzen has generated genuine issues of material fact that she was constructively discharged after affording GKN a reasonable opportunity to work out the problems.

THEREFORE, GKN's August 11, 2004, Motion For Summary Judgment (docket no. 16) is **granted in part and denied in part,** as follows:

1. Summary judgment in favor of GKN is **granted** as to **Counts I, II, and III** of Lorenzen's Complaint.

2. Summary judgment in favor of GKN is **denied** as to **Count IV** of Lorenzen's Complaint.

This matter will proceed to trial on **Count IV** of Lorenzen's Complaint.

**IT IS SO ORDERED.**